Matter of Rochester Redevelopment, LLC v New York State Dept. of Envtl. Conservation (2020 NY Slip Op 04696)





Matter of Rochester Redevelopment, LLC v New York State Dept. of Envtl. Conservation


2020 NY Slip Op 04696


Decided on August 20, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 20, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, CURRAN, AND WINSLOW, JJ.


519 TP 19-01983

[*1]IN THE MATTER OF ROCHESTER REDEVELOPMENT, LLC, PETITIONER,
v
NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION AND BASIL SEGGOS, AS COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, RESPONDENTS. 






KNAUF SHAW LLP, ROCHESTER (AMY K. KENDALL OF COUNSEL), FOR PETITIONER. 


 Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Monroe County [James J. Piampiano, J.], entered July 29, 2019) to review a determination of respondents. The determination denied the application of petitioner for a freshwater wetlands permit to construct a home on waterfront property. 
It is hereby ORDERED that the determination is unanimously confirmed without costs, the petition insofar as it sought to annul the determination is dismissed and the matter is remitted to Supreme Court, Monroe County, for further proceedings in accordance with the following memorandum: Petitioner commenced this CPLR article 78 proceeding seeking to annul the determination of respondents denying its application for a freshwater wetlands permit to construct a home on waterfront property on Irondequoit Bay. A Class I wetland surrounds Irondequoit Bay (see 6 NYCRR 664.5 [a]). The Environmental Conservation Law requires a permit for construction in a wetland and adjacent area, defined as 100 feet from the boundary of the wetland (ECL 24-0701 [1], [2]). Petitioner's proposed dock would be located entirely within the wetland, and the remainder of the project would be located in the adjacent area of the wetland. A hearing was held and, in an interim decision, respondent Basil Seggos, as Commissioner of respondent New York State Department of Environmental Conservation, remitted the matter for an additional hearing for further development of the record. Following the additional hearing, the Commissioner agreed with the recommendation of the Administrative Law Judge and denied the application.
Our review of respondents' determination is limited to whether it is supported by substantial evidence (see CPLR 7803 [4]; Matter of Wilson v Iwanowicz, 97 AD3d 595, 595 [2d Dept 2012]; Matter of Valiotis v State of New York, 95 AD3d 1026, 1027 [2d Dept 2012], lv dismissed 19 NY3d 1008 [2012]). "[T]he substantial evidence standard is a minimal standard" and refers to "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045-1046 [2018] [internal quotation marks omitted]; see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, 100 NY2d 326, 331 [2003]; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]).
In enacting the Freshwater Wetlands Act, the legislature declared that it was "the public policy of th[is] state to preserve, protect and conserve freshwater wetlands and the benefits derived therefrom, to prevent the despoliation and destruction of freshwater wetlands, and to regulate use and development of such wetlands to secure the natural benefits of freshwater wetlands, consistent with the general welfare and beneficial economic, social and agricultural development of the state" (ECL 24-0103). Freshwater wetlands "are invaluable resources for [*2]flood protection, wildlife habitat, open space and water resources" (ECL 24-0105 [1]). "Any loss of freshwater wetlands deprives the people of the state of some or all of the many and multiple benefits to be derived from wetlands," including "wildlife habitat by providing breeding, nesting and feeding grounds and cover for many forms of wildlife, wildfowl and shorebirds, including migratory wildfowl and rare species such as the bald eagle and osprey," and "erosion control by serving as sedimentation areas and filtering basins, absorbing silt and organic matter and protecting channels and harbors" (ECL 24-0105 [7] [b], [f]).
Construction of the type proposed by petitioner in the adjacent area of the wetland is considered "usually incompatible with a wetland and its functions or benefits" (6 NYCRR 663.4 [d] [42]) and requires respondents, before issuing a permit, to consider the three tests for "compatibility" (6 NYCRR 663.5 [d]), which determine whether "the activity (i) would be compatible with preservation, protection and conservation of the wetland and its benefits, and (ii) would result in no more than insubstantial degradation to, or loss of, any part of the wetland, and (iii) would be compatible with public health and welfare" (6 NYCRR 663.5 [e] [1]). If all three compatibility tests are met, a permit, with or without conditions, may be issued (6 NYCRR 663.5 [d] [1]).
Petitioner contends that it demonstrated that the project met the compatibility standards (see 6 NYCRR 663.5 [e] [1]) and that the determination that it did not meet the first two tests was not based on substantial evidence. We reject that contention. Respondents' determination that petitioner had not shown that the project would be compatible with the preservation, protection and conservation of the wetland and its benefits and that the project would result in no more than insubstantial degradation to, or loss of, any part of the wetland is supported by substantial evidence (see Wilson, 97 AD3d at 596; Matter of Watts v New York State Dept. of Envtl. Conservation, 36 AD3d 622, 622-623 [2d Dept 2007], lv denied 8 NY3d 812 [2007]; Matter of Kroft v New York State Dept. of Envtl. Conservation, 7 AD3d 714, 714-715 [2d Dept 2004]). Specifically, there was evidence at the hearings that the project would result in the loss of both wildlife habitat and erosion control (see ECL 24-0105 [7] [b], [f]).
In its petition, petitioner sought the alternative relief of requiring respondents to proceed under the laws of condemnation as set forth in Environmental Conservation Law § 24-0705 (7). "Within the context of [its] review proceeding, a court is authorized to determine whether denial of the permit was proper and, if so, whether the regulation of the particular land has become so rigorous as to amount to a taking without just compensation" (Spears v Berle, 48 NY2d 254, 260 [1979]). Judicial review is thus a two-step process (see Matter of Gazza v New York State Dept. of Envtl. Conservation, 89 NY2d 603, 612 [1997], cert denied 522 US 813 [1997]; Spears, 48 NY2d at 261). "If [a] court finds that the permit denial is supported by substantial evidence, then a second determination is made in the same proceeding to determine whether the restriction constitutes an unconstitutional taking requiring compensation" (de St. Aubin v Flacke, 68 NY2d 66, 70 [1986]; see Gazza, 89 NY2d at 612-613). A hearing must be held "at which the landowner and the State may produce expert testimony and other evidence bearing upon the regulation's effect on the value of the subject parcel" (Spears, 48 NY2d at 261). We conclude that there was insufficient evidence at the administrative hearing regarding the taking issue (see id. at 261 n 3), and thus we remit the matter to Supreme Court for a hearing on that issue (see Matter of Matthews v New York State Dept. of Envtl. Conservation, 25 AD3d 710, 711 [2d Dept 2006]; Matter of Grimaldi v New York State Dept. of Envtl. Conservation, 299 AD2d 410, 410-411 [2d Dept 2002]).
Entered: August 20, 2020
Mark W. Bennett
Clerk of the Court